# **Exhibit D**

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

## FORM 10-Q

☒ **QUARTERLY REPORT PURSUANT TO SECTION 13 OR 15(D) OF THE SECURITIES EXCHANGE ACT OF 1934**

For the quarterly period ended September 30, 2013

OR

☐ **TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(D) OF THE SECURITIES EXCHANGE ACT OF 1934**

For the transition period from _____ to _____

Commission File No. 000-21392

# Amarin Corporation plc
**(Exact Name of Registrant as Specified in its Charter)**

| | |
|---|---|
| **England and Wales** | **Not applicable** |
| (State or Other Jurisdiction of Incorporation or Organization) | (I.R.S. Employer Identification No.) |
| **2 Pembroke House, Upper Pembroke Street 28-32** | **Dublin 2, Ireland** |
| (Address of Principal Executive Offices) | (Zip Code) |

**Registrant's telephone number, including area code: +353 (0) 1 6699 020**

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days.   YES ☒   NO ☐

Indicate by check mark whether the registrant has submitted electronically and posted on its corporate Web site, if any, every Interactive Data File required to be submitted and posted pursuant to Rule 405 of Regulation S-T (§229.405 of this chapter) during the preceding 12 months (or for such shorter period that the registrant was required to submit and post such files).   YES ☒   NO ☐

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, a non-accelerated filer, or a smaller reporting company. See the definitions of "large accelerated filer," accelerated filer" and "smaller reporting company" in Rule 12b-2 of the Exchange Act.

| | | | |
|---|---|---|---|
| Large accelerated filer | ☒ | Accelerated filer | ☐ |
| Non-accelerated filer | ☐ (Do not check if smaller reporting company) | Smaller reporting company | ☐ |

Indicate by check mark whether the registrant is a shell company (as defined in Rule 12b-2 of the Act).   YES ☐   NO ☒

172,195,467 shares held as American Depository Shares (ADS), each representing one Ordinary Share, 50 pence par value per share, and 468,546 ordinary shares, were outstanding as of November 1, 2013.

[Table of Contents](#)

# PART II

### Item 1. *Legal Proceedings*

On November 1, 2013, a purported investor of Amarin filed a putative class action lawsuit against Amarin and our Chief Executive Officer in the U.S. District Court for the District of New Jersey, *Steven Sklar v. Amarin Corporation plc and Joseph S. Zakrzewski*, No. 13-cv-6954 (D.N.J. Nov. 1, 2013). The lawsuit alleges that, during the period July 9, 2009 through October 15, 2013, we misled investors regarding the FDA's willingness to approve Vascepa's ANCHOR indication and the potential relevance of data from the ongoing REDUCE-IT trial to that approval, thereby artificially inflating the price of our securities. Based on these allegations, the suit asserts claims under the Securities Exchange Act of 1934 and seeks unspecified monetary damages and attorneys' fees and costs. We believe that we have valid defenses and we will vigorously defend against the claims.

On November 5, 2013, a purported investor of Amarin filed a putative class action lawsuit against Amarin and certain of our officers in the U.S. District Court for the Southern District of New York, *Joseph A. Bove and Joseph J. Bove v. Amarin Corporation, PLC., Joseph S. Zakrzewski, John F. Thero, and Steven B. Ketchum*, No. 13-CIV-7882 (S.D.N.Y. Nov. 5, 2013). The lawsuit alleges, similar to the *Sklar* case, that, during the period August 8, 2012 until October 16, 2013, we misled investors regarding the FDA's willingness to approve Vascepa's ANCHOR indication and the potential relevance of data from the ongoing REDUCE-IT trial to that approval, thereby artificially inflating the price of our securities. Based on these allegations, the suit asserts claims under the Securities Exchange Act of 1934 and seeks unspecified monetary damages and attorneys' fees and costs. We believe that we have valid defenses and we will vigorously defend against the claims.

In addition to the above, in the ordinary course of business, we are from time to time involved in lawsuits, claims, investigations, proceedings, and threats of litigation relating to intellectual property, commercial arrangements and other matters. While the outcome of these proceedings and claims cannot be predicted with certainty, as of September 30, 2013, we were not party to any legal or arbitration proceedings that may have, or have had in the recent past, significant effects on our financial position or profitability. No governmental proceedings are pending or, to our knowledge, contemplated against us. We are not a party to any material proceedings in which any director, member of senior management or affiliate of ours is either a party adverse to us or our subsidiaries or has a material interest adverse to us or our subsidiaries.

### Item 1A. *Risk Factors*

*This Quarterly Report on Form 10-Q contains forward-looking information based on our current expectations. Because our actual results may differ materially from any forward-looking statements that we make or that are made on our behalf, this section includes a discussion of important factors that could affect our actual future results, including, but not limited to, our capital resources, our ability to successfully commercially launch Vascepa, the progress and timing of our clinical programs, the safety and efficacy of our product candidates, risks associated with regulatory filings, risks associated with determinations made by regulatory agencies, the potential clinical benefits and market potential of our product candidates, commercial market estimates, future development efforts, patent protection, effects of healthcare reform, reliance on third parties, and other risks set forth below.*

*Those risk factors below denoted with a "\*" are newly added or have been materially updated from our Annual Report on 10-K filed with the Securities and Exchange Commission on February 28, 2013.*

**Risks Related to the Commercialization and Development of Vascepa**

> ***Our ability to generate increased revenue over the next few years depends, in part, on FDA approval for the use of Vascepa in the ANCHOR indication in the United States and we may be delayed in obtaining, or never obtain, such approval. In October 2013 an advisory committee convened by the FDA voted 9 to 2 against recommending approval of Vascepa in the ANCHOR indication, as a result of which there is a significant risk that FDA will not approve Vascepa for this indication.***

While we are currently marketing Vascepa for use in the MARINE indication in the United States, our ability to commercialize Vascepa in the ANCHOR indication in the United States or market Vascepa for either indication outside of the United States is dependent upon receiving additional regulatory approvals. In April 2013, the FDA accepted our Supplemental New Drug Application, or sNDA, which seeks approval for the use of Vascepa in patients with high triglyceride levels (TG $\geq$200 mg/dL and <500 mg/dL) who are also on statin therapy for elevated LDL-C levels, which we refer to as the ANCHOR indication, and the FDA has assigned the sNDA a Prescription Drug User Fee Act, or PDUFA, date of December 20, 2013 for the completion of its review. The PDUFA date is the goal date for the FDA to complete its review of the sNDA. The FDA may complete its review of the sNDA earlier than this date and there can be no assurance that the FDA will complete its review by this date.

On June 18, 2013, the FDA informed us that it planned to convene an advisory committee meeting on October 16, 2013 to review the sNDA for the ANCHOR indication. On October 11, 2013, the FDA posted on its website executive summary briefing documents from both the FDA and Amarin for the advisory committee consideration. Included in these materials was the voting question posed to the advisory committee, which was stated in its entirety as follows: "Taking into account the described efficacy and safety data for Vascepa, do you believe that its effects on the described lipid/lipoprotein parameters are sufficient to grant approval for co-administration with statin therapy for the treatment of patients with mixed dyslipidemia and CHD or CHD risk equivalent prior to the completion of REDUCE-IT?" On October 16, 2013, the advisory committee voted 9 to 2 against recommending approval of Vascepa, based on the question posed to the advisory committee by the FDA.

During the advisory committee meeting, based in part on the briefing materials prepared by the FDA for the meeting, the advisory committee reviewed the safety and efficacy data observed in the ANCHOR trial. This included a discussion regarding observed nominally

statistically significant changes from baseline in an adverse direction, while on background statin therapy, in certain lipid parameters, including TGs, in the placebo group, raising the possibility that the mineral oil placebo used in the ANCHOR trial (and in the REDUCE-IT trial) was not biologically inert and might be viewed as artificially exaggerating the clinical effect of Vascepa when measured against placebo in the ANCHOR trial. Because no strong evidence for biological activity of mineral oil was identified by the FDA in the MARINE trial, ultimately it was concluded that the between-group differences likely provided the most appropriate descriptions of the treatment effect of Vascepa and that whatever factor(s) led to the within-group changes over time in the

35